## NORTHERN PACIFIC RAILROAD COMPANY *v.* PATTERSON.

ERROR TO THE SUPREME COURT OF THE STATE OF MONTANA.

No. 357.   Argued and submitted April 12, 1894. — Decided May 26, 1894.

When the laws of a State create a tribunal for the correction and equaliza-
tion of assessments, and provide that persons feeling aggrieved by a val-
uation may apply to such board for its correction, and confer upon the
board power so to do, it is for the Supreme Court of the State to deter-
mine whether the statute remedy is exclusive or whether it is only cumu-
lative; and its action in that respect raises no Federal question.

THIS was an action commenced by the Northern Pacific
Railroad Company against J. L. Patterson, county treasurer
of Gallatin County, Montana, for an injunction to restrain
the defendant from selling certain lands, blocks, and lots for
taxes which had been levied thereon in the year 1889, or
collecting the same, and also for a decree adjudging said
taxes to be void.   The complaint set out three separate and
distinct causes of action, but it is not claimed that any Fed-
eral question was presented by the allegations in respect of
the second and third causes, and no error as to the ruling of
the state court thereon was assigned in this court.   The
complaint asserted an interest in the lands in question under
the act of Congress approved July 2, 1864, entitled "An act
granting lands to aid in the construction of a railroad and
telegraph line from Lake Superior to Puget Sound on the
Pacific Coast on the northern route;" but insisted that the
lands were not so segregated from the public domain and
identified as a part of the lands granted by said act as to
extinguish all interest of the United States therein and render
them taxable.   And the grounds set up are thus stated in
the brief of counsel: "That a grant was made to the plain-
tiff by said act of July 2, 1864; that plaintiff definitely fixed
the line of its road and filed a plat thereof in the office of
the Commissioner of the General Land Office; that the road

was duly constructed and was accepted by the president. That the lands involved are on and within 40 miles of the line of the road as definitely fixed; and that plaintiff has performed all the things and conditions upon its part to be done and performed to entitle it to the lands inuring to it under the grant; except that it has not repaid to the United States the cost of surveying these lands; that it is now, and has been at all times, ready and willing to pay such costs, and has so advised the United States, but is unable to repay such costs until the United States shall determine what lands are granted to it. That the lands have not been certified or patented to plaintiff, and that the United States have failed and refused to certify said lands, or to certify any lands in Gallatin County to plaintiff, for the reason that it is claimed that said lands are mineral, and are excepted from the grant, and that the question whether the title to said lands passed to plaintiff under said grant, and plaintiff's compliance therewith, is now in controversy and pending before the Commissioner of the General Land Office and Secretary of the Interior. That this failure to certify or patent these lands is solely because of their non-identification as granted lands. That the lands granted by said act of Congress to plaintiff in said county have never been segregated from the public lands, or identified, and the boundaries of the specific lands granted have never been ascertained or determined.

"That plaintiff has no other right, title, claim, interest, property or possession of, in or to said lands described in the complaint, than such right, title, claim, interest, property or possession, as it obtained under said act of July 2, 1864.

"That in 1889, the county officers of Gallatin County assessed these lands to plaintiff and proceeded to levy taxes thereon, and defendant, the county treasurer, having advertised the same for sale in satisfaction of these taxes, is about to sell them."

The complaint alleged that a sale would greatly impair the rights of the plaintiff in and to the lands, and cloud its title thereto, and cause a multiplicity of suits with reference to such title, etc. The defendant demurred on the ground that

the complaint did not state facts sufficient to constitute a cause of action, which demurrer was sustained, and, plaintiff electing to stand on the complaint, judgment was entered in favor of defendant. From this judgment plaintiff appealed to the Supreme Court of the State, by which it was affirmed. 10 Montana, 90. Thereupon plaintiff sued out this writ of error.

*Mr. James McNaught* for plaintiff in error. *Mr. F. M. Dudley* filed a brief for same.

*Mr. W. W. Dixon* for defendant in error, submitted on his brief; on which were also *Mr. H. J. Haskell,* Attorney General of the State of Montana, *Mr. H. C. Cockrill,* and *Mr. Ella L. Knowles.*

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the Court.

The ground upon which it was asserted that these lands were not subject to taxation was that they had not been identified as lands passing to the plaintiff under its grant, because the United States had refused to certify them, and held them suspended "for the reason that it is claimed that such lands are mineral and are excepted from the grant to the plaintiff." It was said in *Wisconsin Central Railroad* v. *Price,* 133 U. S. 496, 505, that "he who has the right to property, and is not excluded from its enjoyment, shall not be permitted to use the legal title of the government to avoid his just share of state taxation," and plaintiff does not state whether all or any part of the lands are mineral or non-mineral. If the legal or equitable title to the lands or any of them was in the plaintiff, then it was liable for the taxes on all or some of them, and the mere fact that the title might be in controversy would not appear in itself to furnish sufficient reason why plaintiff should not determine whether the lands or some of them were worth paying taxes on or not; but the ground upon which the decision of the Supreme Court of Montana proceeded was this: The 22d section of the statute of Montana,

entitled "An act to provide for the levy of taxes and assessment of property," (Laws Mont., Ex. Sess. 15th Leg. Ass., 1887, 82, 92,) provided:

"The board of county commissioners of each county shall constitute a board for the correction of the assessment roll and the equalization of assessed value of property, and on the third Monday in the month of September, of each year, said board shall meet at the office of the county clerk, at the county seat, and may adjourn from time to time as deemed necessary. Public notice of the time and place of the meeting of said board shall be given by the county clerk by publication for at least two successive weeks, in a newspaper published in said county, if there be one, otherwise by notices posted in five public places immediately prior to the meeting of said board of equalization; but no notice of an adjourned meeting of said board shall be required. Any person feeling aggrieved by any valuation, or amount of property listed, or by any other fact appearing on such assessment, may apply to such board for the correction thereof, and if, in the opinion of said board, any valuation is too high or too low, as compared with other valuations, by the assessor, of similar classes of property, it may equalize the same; but if such equalization results in any increase, the party affected thereby shall be given reasonable notice of the intention to increase such valuation, with opportunity to appear, which notice may be sent by mail, with postage thereon prepaid. If any person returned as refusing to render a list or to be sworn thereto can show good cause therefor, the penalty provided may be remitted."

The court held that under this section plaintiff had an ample legal remedy which it was obliged to exhaust before the equitable powers of the court could be resorted to, and, as upon the face of the bill it appeared that the plaintiff had not applied to the board of equalization of Gallatin County for the correction or abatement of the assessment, that no jurisdiction existed under the complaint to grant the injunction. It is contended, on the other hand, that where taxes are levied upon property which is by law exempt from taxation, the statutory remedy by application to a board of review is only

cumulative and that the taxpayer may at his election seek his remedy by injunction in the first instance. But it was for the Supreme Court of Montana to determine whether the statute was exclusive and whether plaintiff came within its terms or not, and its action in that regard raises no Federal question for our consideration. It is argued that the opinion in effect decides that, under the statute, the State of Montana has a right to assess and levy taxes upon the lands of the United States, and that if no application is made to the board of equalization, the sale of such public lands cannot be restrained. The plaintiff, however, in no respect represented the United States, and an injunction cannot be granted to private individuals to avert the sale for taxes of the property of others, whether exempt from taxation or not.

The writ of error must be

*Dismissed.*